IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEAF FUNDING, INC.,

                                                OPINION and ORDER

                 Plaintiff,

                                                07-cv-0589-bbc

      v.

COOL EXPRESS WISCONSIN, INC.,
SOUTHERN WISCONSIN DIESEL &
TRAILER REPAIR, INC.;
MELODY J. WESSELS; ELAINE WESSELS;
DARRELL L. WESSELS; DANNY D. WESSELS;
DIRECT CAPITAL CORP.,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case involves a contract dispute between a creditor and a party who bought the creditor's accounts receivable. Its resolution turns on one question: whether the creditor, defendant Direct Capital Corp., breached the warranties of the purchase agreement by failing to provide plaintiff Leaf Funding, Inc., a valid and enforceable guaranty contract.

The legal issue may be fairly straightforward, but the procedural maneuverings are less so. In response to plaintiff's original complaint in this case, only former defendant D&D Construction, LLC, filed an answer. It argued successfully that it had been named fraudulently or mistakenly, dkt. #4, and was dismissed from the case. Dkt. #18. On April

1

29, 2008, plaintiff filed an amended complaint against defendants Cool Express Wisconsin, Southern Wisconsin Diesel & Trailer Repair, Inc., Melody, Elaine, Darrell and Danny Wessels, as well as Direct Capital. Dkt. #20. Defendant Direct Capital was the only party that responded to the amended complaint.

On December 9, 2008, this court entered default judgment against defendants Cool Express Wisconsin and Southern Wisconsin Diesel & Trailer Repair, Inc. Defendants Melody, Elaine, Darrell and Danny Wessels filed for bankruptcy in November 2008. Because Direct Capital is the only remaining defendant, throughout the rest of this opinion I will refer to it simply as defendant.

This case is before the court on plaintiff's motion for summary judgment. Plaintiff alleges that defendant breached the terms of the parties' March 30, 2007 purchase agreement, specifically, the warranties in that agreement, by representing falsely that all of the underlying finance agreements were valid and enforceable. As it turned out, the warranty was not true with respect to a Cool Express finance agreement. Plaintiff seeks damages under the purchase agreement equal to the unpaid portion of that finance agreement. In opposition, defendant argues that plaintiff has failed to properly enforce the contract; the guaranty contract can be reformed to be enforceable; and plaintiff has failed to offer sufficient evidence to support its alleged damages. Diversity jurisdiction is present. 28 U.S.C. §1332. Venue is proper. 28 U.S.C. §1391(a).

Plaintiff's motion for summary judgment will be granted. Defendant breached the warranties and representations of the purchase agreement by failing to provide plaintiff the valid and enforceable guaranty contract required under the agreement. Therefore, plaintiff is entitled to damages, attorney fees and expenses.

For the purpose of deciding the motion for summary judgment, I find the following facts to be undisputed and material.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Lead Funding, Inc., is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. Defendant Direct Capital is a New Hampshire corporation with its principal place of business in Portsmouth, New Hampshire.

### B. The Direct Capital-Cool Express Finance Agreement

On or about September 14, 2006, defendant entered into a finance agreement with defendant Cool Express, under which defendant agreed to finance Cool Express's purchase of certain property described in future "equipment schedules." On or about February 5, 2007, Cool Express and defendant executed an equipment schedule, in which Cool Express agreed to make 60 monthly payments of $3,673.85 for the financed equipment.

3

To secure Cool Express's debt, defendant Darrell Wessels executed a corporate guaranty and resolution of authority. According to the documents, D&D Construction, LLC, absolutely and unconditionally guaranteed full and prompt payment and performance of Cool Express's obligations under the equipment schedule. The resolution of authority states that:

> Darrell Wessels is authorized . . . on behalf of D&D Construction, LLC to finance equipment from Direct Capital Corporation purchased by Direct Capital Corporation [sic. presumably he means to say Cool Express]. This authorization includes, but is not limited to signing all required documents in order to commence the agreement.
>
> ****
>
> I, Darrell Wessels, do hereby certify that I am the sole officer and majority shareholder of D&D Construction, LLC., a [Wisconsin] corporation, and am duly authorized as such to execute guaranty(s) . . . .

Polar Express Cold & Storage, Inc., Southern Wisconsin Diesel and Darrell, Elaine, Melody and Danny Wessels also executed guaranties in which each individual and corporate entity absolutely and unconditionally guaranteed the full and prompt payment of Cool Express's obligations under the schedule.

Before approving the finance agreement, defendant reviewed Darrell Wessels's personal financial statement, in which Wessels claimed a 50% equity worth $220,552.00 in an entity identified as "D & D Construction." Defendant consulted the State of Wisconsin Department of Financial Institutions website and found a corporate entity named "D & D

4

Construction, LLC." Believing this was the corporation referred to in Darrell Wessels's financial statement, defendant inserted this name on the guaranty contract, without conducting an independent credit review of the corporate entity named D&D Construction, LLC.

### C. The Purchase Agreement between Plaintiff and Defendant

On or about March 30, 2007, plaintiff and defendant entered into a "Lease Portfolio Purchase Agreement" in which defendant sold, assigned and transferred to plaintiff assets in the form of finance agreements, one of which was the Direct Capital-Cool Express finance agreement. Under the purchase agreement, plaintiff was entitled to collect the payments Cool Express owed defendant under the Direct Capital-Cool Express finance agreement. In a section titled "Warranties as to Lease Transactions; Documentation," the purchase agreement provides that:

> (a) As to each Asset assigned by [defendant] to [plaintiff] . . ., [defendant] represents and warrants that as of this date of this Agreement:
>
> ****
>
> (2) such Contract and all accompanying guaranties, waivers and other instruments are true, valid, genuine, binding and enforceable in accordance with their respective terms;
>
> ****

5

(5) as to each Contract delivered to [plaintiff] . . . , such Contract . . . constitutes the entire agreement of the parties thereto

(6) all information provided by [defendant] to [plaintiff] concerning such Contract . . . has been provided with the knowledge that [plaintiff] has been induced to enter into this Agreement . . . in reliance on such information and [defendant] warrants that, to the best of its knowledge, all such information was accurate and correct as of the date it was obtained by [plaintiff]

In addition, the purchase agreement contains two provisions detailing the parties' rights and duties in the event of a breach. In a section entitled "Repurchase of Assets," defendant agreed to repurchase the contracts within ten days after the receipt of a written demand from plaintiff "[u]pon the occurrence of a material breach by [defendant] of any representation, warranty, covenant, or obligation of this [Purchase] Agreement relating to the Assets." Another section of the purchase agreement contains an indemnification provision that states:

[Defendant] shall indemnify and hold [plaintiff] harmless against and from any and all losses, claims and expenses, including legal fees and expenses ("Claims") arising from: (i) any breach by [defendant] of any warranty, covenant or other obligation of [defendant] in this Agreement . . . .

### D. D&D Construction, LLC

D&D Construction, LLC, did not authorize defendant Darrell Wessels or anyone else to execute a corporate guaranty for D&D Construction, LLC. Darrell Wessels is not now and never has been a manager, member, employee, agent or representative of D&D

6

Construction or D&D Construction, LLC.

### E. Cool Express and the Wessels Default

Cool Express and the Wessels defaulted on Cool Express's contract with defendant. On February 22, 2008, plaintiff demanded that defendant buy back the Direct Capital-Cool Express finance agreement. Defendant refused to do so.

## OPINION

### A. Choice of Law

The purchase agreement between the parties provides that it is "governed by and construed in accordance with the internal laws of the State of New Hampshire." Because neither party denies that this provision governs their dispute, I will follow the parties' lead and the language of the contract and apply New Hampshire law.

### B. Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most

favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor. Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

### C. Breach of Contract

The dispute between plaintiff and defendant arises out of misrepresentations made by defendant about the accuracy and enforceability of the guaranties in the underlying finance agreement. Had plaintiff wished, it could have brought this action as one for misrepresentation and sought avoidance of the purchase agreement. Instead, plaintiff frames its breach of warranty claim under a breach of contract analysis. Under New Hampshire law, "[a] breach of contract occurs when there is a failure without legal excuse[ ] to perform any promise which forms the whole or part of a contract." Poland v. Twomey, 156 N.H. 412, 415, 937 A.2d 934, 937 (2007). Although plaintiff treats a breach of contract and a breach of warranty as synonymous, they are not. However, in this case, the two are intertwined.

Generally, a warranty is an expression of the quality or value of a good, property or title and not necessarily a promise or contract. 18 Williston on Contracts, § 52:35, 175-77

(2001). However, New Hampshire law has adopted the principle that express warranties in insurance contracts and contracts for the sale of goods can give rise to actions for damages when the warranty is an essential element of a contract. If a contracting party "in express terms, stipulate[s] and warrant[s] that a certain fact is true, that warranty makes the fact a material one; and . . . an indispensable condition in the compact." Amoskeag Trust Co. v. Prudential Insurance Co. Of America, 88 N.H. 154, 185 A. 2, 6 (1936). With respect to the sale of goods, the Uniform Commercial Code, adopted by New Hampshire law, provides that "'express warranties can be created by promises or affirmations of fact which relate to the goods and become part of the contractual bargain.'" Xerox Corp. v. Hawkes, 124 N.H. 610, 616, 475 A.2d 7, 9 (1984)); see also N.H. Rev. Stat. Ann. § 382-A:2-313(1)(a) (1994). "Absent a valid disclaimer or limitation, an express warranty attaches to the goods that are the subject of the sale . . . and a breach of it gives rise to a cause of action for damages." Fassi v. Auto Wholesalers of Hooksett, 145 N.H. 404, 762 A.2d 1034, 1035 (2000); see also N.H. Rev. Stat. Ann. § 382-A:2-714. In other words, the express warranty induces the buyer to enter into the contract and is part of the bargained-for consideration of the contract. Therefore, a breach of the express warranty is equivalent to a breach of the contract because the breach deprives the injured party of the benefit it reasonably expected from the contract. If the party does not receive the contracted-for-benefit, then the breach is material and the injured party is entitled to damages. Restatement (Second) of Contracts § 241 (1981); Fitz

9

v. Coutinho, 136 N.H. 721, 724-25, 62 A.2d 1220, 1223 (1993) (citing factors listed in Restatement for guidance in determining whether breach is material).

Although this case does not involve a contract for insurance or for the sale of goods, the contractual principles applicable to those categories of cases are helpful in analyzing a contract for the sale of contracts and finance agreements. Therefore, I will apply those principles to the parties' dispute.

To prove a breach of warranty and collect damages, plaintiff must show that the purchase agreement contained an express warranty about a fact that plaintiff relied on in entering into the purchase agreement and that the warranty was part of the benefit for which plaintiff bargained. The parties' purchase agreement contains a section titled "Warranties as to Lease Transactions; Documentation" in which defendant represented and warranted that "all accompanying guaranties, waivers and other instruments are true, valid, genuine, binding and enforceable in accordance with their respective terms" and that each contract "constitutes the entire agreement of the parties thereto." Grant Aff., Exh. 8, dkt # 49-8, at 2-3. Therefore, the purchase agreement contains an express warranty that all the contracts are enforceable according to their terms, or as written, and that there are no agreements not expressed in the contract.

The question is whether defendant breached this warranty because the D&D Construction Guaranty cannot be enforced against the party named in the contract. The

10

finance agreement identifies D&D Construction, LLC, as a corporate guarantor of defendant Cool Express's debt. However, this company was never a proper party to the Direct Capital-Cool Express finance agreement and cannot be bound by its terms. E.g., Bielagus v. EMRE of New Hampshire Corp., 149 N.H. 635, 640, 826 A.2d 559, 564 (2003) (non-party to contract cannot be bound); see also Simpson v. Calivas, 129 N.H. 1, 7, 650 A. 2d 318, 321 (1994) (general rule that non-party to contract cannot sue for breach). If the contract is not enforceable against D&D Construction, LLC, then defendant breached the warranty in the purchase agreement that all the contracts purchased in March of 2007 were true, valid, genuine, binding and enforceable.

Defendant asserts two defenses against plaintiff's claim that the contract is unenforceable. First, defendant denies that plaintiff has shown that the contract is truly unenforceable, when plaintiff has not attempted to enforce the contract against the party against whom it can be enforced: D&D High Ridge, LLC, a corporation that is controlled by Darrell Wessels. According to defendant, when it entered into the Cool Express-Direct Capital finance agreement, it intended that Cool Express's obligations "were to be guaranteed by . . . a number of corporate entities controlled by Darrell Wessels, one of which is D&D High Ridge, LLC," dft.'s PFOF, dkt. #71, at 1, ¶ 2, but it erred in identifying the corporate guarantor.

This is a strange argument. How would plaintiff know that Darrel Wessels meant to

11

say D&D High Ridge, LLC, when he wrote D&D Construction, LLC? Nothing in the agreement that plaintiff purchased said anything about D&D High Ridge, LLC. And what would plaintiff enforce against D&D High Ridge, LLC? That entity is not a party to any finance agreement. Plaintiff did try to enforce the contract against its guarantor, D&D Construction, LLC, by joining it as a party in this lawsuit but had to dismiss it upon learning that it was named mistakenly in the finance agreement. Finally, defendant cites no law that requires plaintiff to try to enforce the contract against an entity that is not a party to the contract before it will be permitted to seek damages from the seller of the contracts.

Second, despite the fact that defendant now knows that it misrepresented the name of the guarantor to plaintiff, it argues that the contract is enforceable under the contract theory of reformation. Under New Hampshire law, "reformation may be proper when an instrument fails to express the intention which the parties had in making the contract." A.J. Cameron Sod Farms, Inc. v. Continental Ins. Co., 142 N.H. 275, 282-283, 700 A.2d 290, 295 (1997); Erin Food Services, Inc. v. 688 Properties, 119 N.H. 232, 236-37, 410 A.2d 201, 204 (1979). "Absent fraud, reformation requires a mutual mistake of fact." Midway Excavators, Inc. v. Chandler, 128 N.H. 654, 658, 522 A.2d 982, 984 (1986).

> Reformation of an instrument for mutual mistake of fact requires that the party seeking reformation 'demonstrate by clear and convincing evidence that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing.'

12

Sommers v. Sommers, 143 N.H. 686, 690, 742 A.2d 94, 97 (1999).

In an affidavit submitted on December 9, 2008, Darrell Wessels states that he never intended to act for D&D Construction, LLC, and that he was acting for D&D High Ridge, LLC, when he signed the corporate guaranty for Cool Express. In addition, defendant submits affidavits from two of its employees that both state "[a]t all times our understanding was that the party to the [corporate guaranty] was the corporate entity we know now to be named D & D High Ridge LLC." O'Connell Aff., dkt. #63, at 2, ¶ 4; Harmon Aff., dkt #62, at 2, ¶ 3. According to defendant, because the parties' true intent was to bind D&D High Ridge LLC, the contract could be reformed so that it would be enforceable against D&D High Ridge, LLC. In other words, the possibility of reformation would mean that the error does not amount to a breach or a false representation.

Generally, reformation is appropriate when the *original* parties to a contract are claiming a discrepancy between the written contract and the intended agreement. When, as in this case, the plaintiff and the defendant are not the parties to the discrepant contract, reforming the contract to the parties' original understanding is not an option.

Next, I turn to the questions of reliance and material breach. Although two separate concepts, they are linked in this case. As previously discussed, an express warranty induces reliance when the warranty is a basis for entering into the contract and a breach is material when it deprives a party of the benefit it reasonably expected. When plaintiff entered into

13

the purchase agreement, it purchased the right to collect future payments from Cool Express as well as the assurance that each debt it purchased was backed by accurate and enforceable guaranties. The purchase agreement states that " all information provided by [defendant] to [plaintiff] concerning such Contract . . . has been provided with the knowledge that [plaintiff] has been induced to enter into this Agreement . . . *in reliance* on such information and [defendant] warrants that, to the best of its knowledge, *all such information was accurate and correct* as of the date it was obtained by [plaintiff]." Grant Aff., Exh. 8, dkt # 49-8, at 3 (emphasis added).

Plaintiff entered into the contract on the basis of defendant's warranty of the validity of the information and contracts contained in the purchase agreement. In other words, plaintiff relied on defendant's express warranty. As plaintiff discovered eventually, the Cool Express debt was not backed by the corporate entity named in the finance agreement, making it impossible for plaintiff to collect the debt. Plaintiff did not receive the benefit it reasonably expected, namely, the ability to collect on a valid corporate guaranty. Given the nature of finance agreements and the importance of valid guaranties, this was a material breach.

In opposition, defendant argues that its breach was not material and that plaintiff must show reliance on the specific facts contained in the contract in order to collect damages for breach. Both of these arguments are unpersuasive. Although defendant argues that the

14

breach was not material, it develops no argument on this matter except one conclusory line in its response to plaintiff's proposed findings of fact. In contrast, plaintiff has demonstrated that the inability to enforce the Direct Capital-Cool Express finance agreement deprived it of an essential benefit of the purchase agreement. Defendant has failed to produce any evidence to prove otherwise. (Defendant does not argue that plaintiff would not have been able to collect from Cool Express, even if Wessels had signed on behalf of D&D High Ridge, LLC, because High Ridge has no money so I need not address any question that circumstance might raise.)

With respect to defendant's reliance argument, I disagree with defendant's position that plaintiff must show it relied on the specific facts in the finance agreements. To collect damages for defendant's breach, plaintiff need show only that it relied on defendant's representation that the finance agreements were valid and enforceable, not that it relied on information contained within the finance agreements. When a third party purchases a contract, it is entitled to rely on the promise of the seller that the contract is valid, especially when the selling party warrants and represents the validity of the contracts. Defendant represented to plaintiff on March 30, 2007 that the contracts it sold represented the entirety of the agreements, that all the information in the contracts was accurate and that the contracts were enforceable. This representation was not true, but it was the representation on which plaintiff relied. Because the parties agreed expressly in the purchase agreement

15

that plaintiff was relying on defendant's representations, plaintiff is entitled to damages resulting from defendant's breach of contract.

### C. Damages, Attorney Fees and Expenses

With respect to the amount of damages, the purchase agreement states that in the event of a material breach, defendant is required to buy back the affected assets according to their book value plus "swap breakage costs." Grant Aff., Exh. 8, dkt. #49-8, at 5. According to plaintiff, the "book value" of the affected assets is $93,897.72. Plt.'s Reply, dkt. #69, at 11. Defendant does not disagree. Plaintiff says it is not seeking "Swap breakage costs" but it does seek expenses and attorney fees in accordance with the indemnification provision of the purchase agreement under which defendant agreed to hold plaintiff harmless against any losses and expenses, including legal fees resulting from any breach by defendant of any warranty.

Defendant does not deny that this is the relevant provision for determining damages for breach. Instead, it argues that the provision is "ambiguous" and that plaintiff has offered no basis for its calculation. This argument is not persuasive. The provision is not ambiguous and plaintiff has shown a basis for the calculation.

In terms of damages, plaintiff seeks the "book value" of the contract, which it argues is "the balance remaining on the Finance Agreement and Schedule, less interest," which is

$93,897.72. Plt.'s Reply, dkt. #69, at 11. Defendant does not contest the amount of plaintiff's damages, but argues that the term "book value" is ambiguous. The term is used generally to mean "the value at which an asset is carried on a balance sheet." Black's Law Dictionary, 195 (8th Ed. 2004); see also New Oxford American Dictionary, 193 (2d Ed. 2005)("the value of a security or asset as entered into a company's books"). New Hampshire case law defines the term in a similar fashion as "the current value of the asset in question" or "the original cost of the asset minus depreciation." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 134-36, 562 A.2d 187, 188-89 (1989); Public Service Co. of New Hampshire v. Town of Ashland, 117 N.H. 635, 637-38, 377 A.2d 124 125 (1977); New England Power Co. v. Town of Littleton, 114 N.H. 594, 603-04, 326 A.2d 698, 704 (1974).

Although the purchase agreement does not clearly define the term, the agreement does suggest that "book value" was intended to represent the current value of the asset. "Book value" is used in a section entitled "Repurchase of Assets" where defendant agrees to repurchase the "affected assets" in the event of breach. In this case, the "affected assets" are the remaining payments on the Direct Capital-Cool Express finance agreement. These payments are what defendant represented plaintiff could collect when plaintiff agreed to the purchase agreement. Because plaintiff cannot receive the benefit of the remaining payments, defendant should repurchase the assets for the amount plaintiff would have been entitled to collect. In other words, defendant should pay plaintiff the remaining value of the contract,

17

or what defendant represented plaintiff would receive. Cf. 24 Williston on Contracts § 64:4, at 52 (4th ed. 2002) ("If the subject matter of a contract has a determinable market value, the plaintiff may generally recover that value upon the defendant's breach, whether the subject matter is tangible or intangible, including for example, an asset such as a contract right."). Under this interpretation, plaintiff would receive its reliance interest, but not be unjustly rewarded for defendant's breach. Farnsworth on Contracts § 12.6 279-82 (3d ed. 2004) (awarding a party its reliance interest protects benefit for which party contracted without placing party in better position than if no breach had occurred).

Plaintiff's proposed definition of the term "book value" as the remaining payments on the finance agreement is reasonable and in accordance with the language of the purchase agreement. I will grant plaintiff's request for damages in the amount of $93,897.72. Furthermore, because I have found that defendant breached the purchase agreement, I find that defendant is liable for plaintiff's attorney fees and expenses, as provided in that agreement.

ORDER

IT IS ORDERED that the motion for summary judgment by plaintiff Leaf Funding, Inc., is GRANTED. Defendant Direct Capital Corp. Is liable to plaintiff in the amount of $93,897.72 and for attorney fees and expenses in an amount to be determined. Plaintiff

may have until February 20, 2009 in which to file an itemized statement of its attorney fees and costs. Defendant may have until February 27 in which to object to the fees and costs.

Entered this 6th day of February, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge